<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RALPH W. LEE,              :
                                 :    Civil Action No. 05-3279 (JLL)
            Petitioner,  :
                                 :
            v.               :    **OPINION**
                                 :
RONALD H. CATHEL, et al.,    :
                                 :
           Respondents.  :

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>            Counsel for Respondents
Ralph W. Lee                 Deborah Bartolomey
New Jersey State Prison       Deputy Attorney General
P.O. Box 861                 Ofc. of New Jersey Att. Gen.
Trenton, NJ 08625-0861       Appellate Section
                                 P.O. Box 086
                                 Trenton, NJ 08625

**LINARES**, District Judge

    Petitioner Ralph W. Lee, a prisoner currently confined at New Jersey State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Ronald H. Cathel and the Attorney General of Pennsylvania.

    For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division.[1]

> At approximately 1:30 p.m. on July 28, 1993, Tito
> Dante Merino was repeatedly stabbed with a knife and
> beaten with a blunt instrument while working at a video
> store.  The perpetrators escaped with $150 in cash,
> several videotapes, watches and a recording machine.
> Two days after the robbery and killing, the police
> arrested Eric Kelley, who gave a full confession in
> which he implicated defendant and David Hancock.  In
> his confession which was admitted in evidence with
> defendant's consent, Kelley described in detail the
> manner in which he and his confederates perpetrated the
> crimes.  Kelley recounted that he stabbed Merino while
> defendant repeatedly struck the victim's head with a
> tape recorder.  Hancock served as a "look-out."
> According to Kelley, the three men used the cash and
> stolen articles to purchase drugs.

> The police detained defendant at approximately the
> same time Kelley was arrested.  Defendant initially
> denied involvement in the crimes.  After being
> confronted with Kelley's confession implicating him and
> Hancock, defendant gave a statement admitting his
> participation in the robbery and killing.  In the
> statement, defendant described striking Merino with a
> car radio as Kelley was stabbing the victim.
> Defendant's statement also contained various other
> details confirming his presence at the scene, such as
> the position in which they placed Merino's body and
> descriptions of customers who entered the store after
> the crimes were perpetrated.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

Defendant's detailed confession was substantially corroborated by other evidence.  For example, witnesses placed defendant, Kelley and Hancock in close proximity to the scene of the crime both immediately before and immediately after the robbery and killing.  Carmen Paredes saw defendant in the video store minutes before the homicide.  She was able to identify defendant's photograph and a polo shirt he was wearing following the arrests.  The wounds suffered by the victim comported with defendant's description of the violent episode.  We need not recount at length other evidence presented by the State disclosing defendant's involvement in the crimes.  Suffice it to say, the State's proofs were substantial.

Against this backdrop, the defense offered by defendant can fairly be described as weak and feeble. Defendant testified that he confessed to the murder because some unidentified individual in the criminal milieu threatened him and his family.  He asserted that he was "fed" the particular details surrounding the crimes by the police.  Defendant presented several other witnesses, including his father and two sisters, in support of his claim of alibi.  As we noted, the jury found defendant guilty on all counts.

(Respondents' Exhibit 10 at 2-4.)

B.   <u>Procedural History</u>

Following a jury trial in the Superior Court of New Jersey,

Law Division, Passaic County, Petitioner was convicted of

purposeful or knowing murder (N.J.S.A. 2C:11-3a(1) and (2)),

felony murder (N.J.S.A. 2C:11-3a(3)), first degree robbery

(N.J.S.A. 2C:15-1), second degree conspiracy to commit robbery

(N.J.S.A. 2C:5-2), possession of a weapon for an unlawful purpose

(N.J.S.A. 2C:39-4d), and possession of a weapon under

circumstances not manifestly appropriate for its lawful uses

(N.J.S.A. 2C:39-5d).  The trial court imposed an aggregate

sentence of life imprisonment plus twenty years, with a 40-year parole disqualifier.  The judgment of conviction was entered on May 17, 1996.  (Resp. Ex. 12 at Da7.)  On June 21, 1999, the Superior Court of New Jersey, Appellate Division, affirmed. (Resp. Ex. 10.)  By Order filed November 10, 1999, the Supreme Court of New Jersey denied certification.  (Resp. Ex. 7.)

In or about June 2000, Petitioner filed a state motion for post-conviction relief.  (Resp. Ex. 6 at Da27.)  Following a non-evidentiary hearing, the trial court denied relief on June 16, 2003.  (Resp. Ex. 6 at Da28; Resp. Ex. 28.)  On November 17, 2004, the Appellate Division affirmed the denial of relief. (Resp. Ex. 4.)  By Order filed February 2, 2005, the Supreme Court of New Jersey denied certification.  (Resp. Ex. 1.)

This Petition, dated June 20, 2005, and Amended Petition followed.  Respondents have answered, asserting that the Petition should be denied on the merits.  Petitioner has not filed a reply in support of the Petition.  This matter is now ready for disposition.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State

4

court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme

Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court

does not contradict relevant Supreme Court precedent." <u>Priester v. Vaughn</u>, 382 F.3d 394, 398 (3d Cir. 2004) (citing <u>Early v. Packer</u>, 537 U.S. 3 (2002); <u>Woodford v. Visciotti</u>, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies. <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v. Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).]

### III.  <u>ANALYSIS</u>

### A.   <u>Ineffective Assistance of Trial Counsel</u>

Petitioner contends that his trial counsel was ineffective in his use of the Kelley confession, in his failure to conduct an

adequate investigation, and in other unspecified cumulative
errors.  The alleged errors are set forth more specifically in
Petitioner's state motion for post-conviction relief as the use
of the Kelley confession, the failure to interview James Thompson
(who allegedly was able to state that the unidentified man in the
store was not Petitioner), and the examination of a detective
from whom defense counsel elicited damaging inadmissible hearsay
on the confidential source's remarks that inculpated Petitioner.

The Appellate Division rejected Petitioner's claim of
ineffective assistance of counsel.

> It is axiomatic that in order for defendant to
> obtain relief based on ineffective assistance grounds,
> he is obliged to show both the particular manner in
> which counsel's performance was deficient and that the
> deficiency prejudiced his right to a fair trial.  See,
> e.g., Strickland v. Washington, 466 U.S. 668, 687, 104
> S.Ct. 2052, 2064, 80 L.Ed.2d 674,693 (1984); State v.
> Fritz, 105 N.J. 42, 58 (1987).  We are persuaded that
> the alleged deficiencies here clearly fail to meet
> either prong of the Strickland test.

> As to defense counsel's use of Kelley's statement,
> the reasons explicitly appear in the trial record and
> there is no reason to go outside that record to
> appreciate the lack of merit in defendant's argument.
> The following colloquy between defense counsel and the
> trial judge is illustrative:

>> DEFENSE COUNSEL: I certainly understand the
>> Court's concern.  I've discussed the matter
>> at length with Mr. Lee and have advised him
>> of both the negative and the positive
>> aspects, potential negative and positive
>> aspects involved in the admission of such
>> statement of his co-defendant.  I believe
>> that the statements and the inconsistencies
>> in the statement of Eric Kelley as opposed to
>> the statement of Ralph Lee and when compared

with other evidence in the case raises such
doubts, such reasonable doubts and tends to
exculpate my client, and for that reason, I
ask the Court to grant the use of Eric
Kelley's statement at trial of Ralph Lee.

THE COURT: And Mr. Lee is in agreement with
this?

DEFENSE COUNSEL: Yes he is.  Your Honor, I've
discussed it with him at length.

THE COURT: Mr. Lee, you're in agreement with
this?

DEFENDANT: Yes.

The PCR judge found this strategic decision neither
deficient nor prejudicial.  Judge Sokalski, in
rejecting the claim of ineffective assistance of
counsel, reasoned:

> Faced with the State's strong case,
> trial counsel attempted to offer a defense
> that could create reasonable doubt.  The
> Defendant testified that he confessed to the
> murder because some unidentified individual
> in the criminal milieu threatened him and his
> family.  He asserted that he was "fed" the
> particular details surrounding the crimes by
> the police.  Defendant presented several
> other witnesses, including his father and two
> sisters, in support of his claim of an alibi.
> The introduction of Kelley's testimony to
> show inconsistencies was a further attempt to
> create reasonable doubt.

> ...

> This court will not second-guess the
> defense's trial strategy.  Defense counsel's
> decision to introduce Kelley's testimony to
> attempt to show inconsistencies but at the
> same time inculpating the Defendant was not
> deficient enough to create reasonable
> probability that these materially contributed
> to defendant's conviction, especially in
> light of the strength of the State's case.

9

As for defense counsel's failure to call James Thompson as a witness, the PCR judge found his statement, to the effect that he knew that the man in the video store was not defendant, was not credible for several reasons.  Notably, Thompson failed to come forward with this exculpatory version for nine years, and moreover, the statement was contradicted by overwhelming evidence to the contrary.  Thus, there was no reasonable possibility that the result of the trial otherwise would have been different.

Equally unpersuasive is defendant's final claim, raised for the first time on this appeal, that his attorney was ineffective for not producing Roberto Sharpe to contradict co-defendant's account of fencing the goods taken from the video store.  This belated claim is barred by defendant's failure to raise it below.  R. 3:22-4.  In any event, we find no merit to the untimely claim.  Even if the prospective witness had denied fencing the stolen goods, we conclude that his denial would have been unlikely to sway the jury due to the substantial proofs against defendant.

Having considered each of the claimed deficiencies in light of the entire record, we are satisfied that none of them, either singly or in combination, amount to a prima facie case of ineffective assistance of counsel to warrant an evidentiary hearing.  State v. Cummings, 321 N.J. Super. 154, 170-71 (App. Div.), certif. denied, 162 N.J. 199 (1999).  Simply put, counsel's strategic choices are unassailable on appeal.  State v. Marshall, 123 N.J. 1, 164-65 (1991), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 694 (1993).  We affirm substantially for the reasons stated by Judge Sokalski in his letter opinion of June 16, 2003.

(Resp. Ex. 4 at 5-8.)  In his letter opinion, Judge Sokalski rejected the one additional claim raised by Petitioner, that counsel had been ineffective for eliciting testimony about a confidential informant who placed Petitioner in the area of the store before the murder.

> ... In summation, Mr. Lucas referred again to the
> confidential informant as being shadowy and that the
> State chose not to identify him. (T13, P30, L1-10.)
> He then argued that this undisclosed person knew more
> about this case than he stated and that Ralph Lee
> was not involved in the murders. Mr. Lucas suggested that
> this unknown person might have been the person who
> threatened defendant, Ralph Lee's life if he did not
> confess to the murder. (T13, P31, L9-19.)
>
> ...
>
> ... Eliciting the information as to what the
> informant observed was not damaging because other
> witnesses testified to this information. Defense
> counsel chose to elicit it for strategic purposes, i.e.
> showing to the jury that the State was hiding a witness
> who could give more information concerning the murders
> that could perhaps prove his client was not involved in
> the murder.

(Resp. Ex. 6 at Da34; Resp. Ex. 28 at 18-21.)

The Counsel Clause of the Sixth Amendment provides that a
criminal defendant "shall enjoy the right ... to have the
Assistance of Counsel for his defence." U.S. Const. amend. VI.
The right to counsel is "the right to <u>effective</u> assistance of
counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)
(emphasis added).

To prevail on a claim of ineffective assistance of counsel,
a habeas petitioner must show both that his counsel's performance
fell below an objective standard of reasonable professional
assistance and that there is a reasonable probability that, but
for counsel's unprofessional errors, the outcome would have been
different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694
(1984). A "reasonable probability" is "a probability sufficient

11

to undermine confidence in the outcome." Strickland at 694.
Counsel's errors must have been "so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable."
Id. at 687. "When a defendant challenges a conviction, the
question is whether there is a reasonable probability that,
absent the errors, the factfinder would have had a reasonable
doubt respecting guilt." Id. at 695.

The performance and prejudice prongs of Strickland may be
addressed in either order, and "[i]f it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689. As a general matter, strategic
choices made by counsel after a thorough investigation of the
facts and law are "virtually unchallengeable," though strategic
choices "made after less than complete investigation are
reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation." Id. at 690-
91. If counsel has been deficient in any way, however, the
habeas court must determine whether the cumulative effect of
counsel's errors prejudiced the defendant within the meaning of
Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d
Cir. 1996).

Here, the state courts correctly identified the governing
federal law.  The determination that Petitioner was not deprived
of his Sixth Amendment right to effective assistance of counsel
was neither contrary to, nor an unreasonable application of,
clearly established federal law, nor was it based on an
unreasonable determination of the facts in light of the evidence
presented to the state courts.  Petitioner is not entitled to
relief on this claim.

B.   <u>Prosecutorial Misconduct</u>

Petitioner contends that he was deprived of his due process
right to a fair trial by the prosecutor's repeated references to
the youth and good qualities of the victim and to the impact of
the victim's death on his family.

The Appellate Division rejected this claim on direct appeal.

> We first consider defendant's claim of
> prosecutorial misconduct.  We agree that the
> prosecutor's remarks concerning the victim's good
> character went beyond the bounds of fair comment.  The
> prosecutor improperly referred to the loss suffered by
> the victim's "loving family," his outstanding work
> record, and the tragedy of his untimely death.  These
> comments were intended to highlight the victim's
> virtues.  They constituted error.
>
> Where the victim's character has no bearing on
> substantive issues of guilt, the prosecutor should
> refrain from commenting on the decedent's virtues.  <u>See</u>
> <u>State v. Marshall</u>, 123 N.J. 1, 163 (1991); <u>State v.</u>
> <u>Hightower</u>, 120 N.J. 378, 411 (1990); <u>State v.</u>
> <u>Pennington</u>, 119 N.J. 547, 570 (1990); <u>State v.</u>
> <u>Williams</u>, 113 N.J. 393, 450 (1988); <u>State v. W.L.</u>, 292
> N.J. Super. 100, 111 (App. Div. 1996); <u>State v.</u>
> <u>Lockett</u>, 249 N.J. Super. 428, 435 (App. Div.), <u>certif.</u>
> <u>denied</u>, 127 N.J. 553 (1991); <u>State v. Darrian</u>, 255 N.J.

Super. 435, 453 (App. Div.), <u>certif. denied</u>, 130 N.J. 13 (1992).  Such comments tend to impassion the jury, <u>State v. Hightower</u>, 120 N.J. at 411, because they imply that "'defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy.'" <u>State v. Pennington</u>, 119 N.J. at 570 (quoting <u>Booth v. Maryland</u>, 482 U.S. 496, 506 n.8, 107 S.Ct. 2259, 2534 n.8, 96 L.Ed.2d 440, 450 n.8 (1987), <u>overruled by</u> <u>Payne v. Tennessee</u>, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (holding that contrary to <u>Booth</u>, the Eighth Amendment erects no per se bar to admission of prosecutorial argument on victim impact evidence)).  Consequently, the prosecutor should not have played on the understandable grief of the victim's family.

We stress, however, that defendant's attorney did not interpose an objection.  It is fundamental in our practice that a claim of error which could have been but was not raised at trial "will not be dealt with as would a timely challenge."  <u>State v. Macon</u>, 57 N.J. 325, 333 (1971).  It may be fair to infer from the failure to object below that in the context of a lengthy trial, "the error was actually of no moment." <u>Ibid.</u>  Not every deviation from perfection on the part of a prosecutor warrants a reversal of a conviction. <u>State v. Bucanis</u>, 26 N.J. 45, 56, <u>cert. denied</u>, 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160 (1958).  Based upon our review of the trial record, we discern no error capable of producing an unjust result.  Although the prosecutor's remarks call for our strong disapproval, we are fully satisfied that defendant was not prejudiced and that he was not denied a fair trial.

(Resp. Ex. 10 at 4-6.)

The U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

He may prosecute with earnestness and vigor – indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

14

> ... Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).

Under U.S. Supreme Court precedent, where a prosecutor's remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).

Here, the state law standard applied by the state courts is analogous to the applicable federal law as stated in Berger and Darden. The conclusion of the state courts that the remarks constituted error, but did not deprive Petitioner of a fair trial, is not contrary to clearly established federal law. Cf. Marshall v. Hendricks, 307 F.3d 36, 63-70 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003). Petitioner is not entitled to relief on this claim.

C.   Jury Instructions

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process." It is

15

> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law." Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

Where such a constitutional error has occurred, it generally

is subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d

16

at 416-17; <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999).[2]

"[I]f the [federal habeas] court concludes from the record that

the error had a 'substantial and injurious effect or influence'

on the verdict, or if it is in 'grave doubt' whether that is so,

the error cannot be deemed harmless." <u>Id.</u> at 418 (citing

<u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating a

challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal

quotations and citations omitted).

1.   <u>Failure to Give Limiting Instruction</u>

Petitioner contends that he was deprived of his due process

right to a fair trial by the trial court's failure to give a

limiting instruction regarding the use the jury could make of the

testimony regarding Petitioner's drug use, including the

testimony that the offenders gathered after the crime to buy

drugs with the proceeds of the robbery.

---

[2]     "[A] misdescription of the burden of proof ... vitiates
<u>all</u> the jury's findings. <u>Sullivan v. Louisiana</u>, 508 U.S. 275,
281 (1993) (emphasis in original).  Such an error is considered
structural and thus is not subject to harmless error review.  <u>See
id.</u> at 280-82.  <u>But see Neder</u>, 527 U.S. at 8-11 (applying
harmless-error analysis where jury was not instructed on an
element of an offense).

The Appellate Division rejected this claim on direct appeal.

We also reject defendant's argument that the trial court committed plain error in its jury instructions. Defendant asserts that he was prejudiced by the trial court's failure to give a limiting instruction pertaining to his drug use.  Evidence relating to defendant's use of drugs was presented by both parties, albeit for different reasons.  The prosecutor offered such evidence to establish defendant's motive for the robbery and killing.  The defense presented such evidence to support defendant's claim that he confessed only because he and his family had been threatened by some unidentified individual within the shadowy world of illegal drugs.  While defendant was entitled to a limiting instruction upon his request, see N.J.R.E. 105 and State v. Cofield, 127 N.J. 328, 341 (1992); State v. Stevens, 115 N.J. 289 (1989), the trial record strongly suggests that his failure to submit a request to charge or otherwise interpose an objection was a tactical decision.  A carefully crafted jury instruction pointing to the purposes for which the other crime evidence could be considered might well have done defendant's case more harm than good.

In any event, we do not deem it a palliative to explore testimonially the thoughts of trial counsel or his pertinent conversations with his now unhappy client.  No one suggested at trial that defendant's drug use evidenced a general propensity to commit crime.  The prosecutor properly asserted that the motive of the robbery and killing was to obtain money to purchase drugs.  Substantial evidence was presented to establish this thesis.  The defense properly asserted that his confession was prompted by threats from someone within the criminal milieu.  Some evidence was presented to support that thesis.  There is no basis in the record to support the conclusion that the jury considered this evidence for any purpose other than that urged by the prosecutor and defense counsel. We find no violation of defendant's right to a fair trial.

(Resp. Ex. 10 at 6-7.)

Here, Petitioner does not contend that the evidence of other bad acts was not admissible, see N.J.R.E. 404(b), but that the

18

trial court, <u>sua</u> <u>sponte</u>, should have given a limiting instruction as to the use of the evidence.  Petitioner has pointed this Court to no Supreme Court precedent in support of his position, and this Court has located none.  To the contrary,

> When evidence of a defendant's other crimes is introduced ..., there is sometimes "a substantial danger of unfair prejudice" because the jury may consider the evidence as proof of bad character or propensity to commit the crime charged.  <u>United States v. Murray</u>, 103 F.3d 310, 316 (3d Cir.1997), <u>cert. denied</u>, 525 U.S. 911, 119 S.Ct. 254, 142 L.Ed.2d 209 (1998).  To alleviate this risk, counsel may request a cautionary instruction.  <u>See generally</u> <u>Lesko v. Owens</u>, 881 F.2d 44, 55 (3d Cir.1989), <u>cert. denied</u>,493 U.S. 1036, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990).  In some circumstances, such an instruction may be strongly advisable; in others, counsel may reasonably conclude that it is strategically preferable to omit such a request since the instruction might have the undesired effect of highlighting the other crimes evidence.

<u>Buehl v. Vaughn</u>, 166 F.3d 163, 170 (3d Cir. 1999).  Thus, a decision to request or forego a limiting instruction may be a matter of trial strategy.  The determination of the state court that the absence of a limiting instruction did not deprive Petitioner of a fair trial is not contrary to clearly established federal law.  Petitioner is not entitled to relief on this claim.

2.   <u>Instructions on Robbery</u>

Petitioner contends that the trial court deprived him of his due process rights by instructing the jury on an unindicted theory of robbery and by using an instruction that invited a non-unanimous verdict.

The Appellate Division rejected this claim on direct appeal.

19

The third count of the indictment charged
defendant with first degree robbery.  That count
alleged that defendant "inflict[ed] bodily injury or
use[d] force upon [the victim], or threatened the
victim [with] or purposely inflicted serious bodily
injury while armed with or using or threatening the
immediate use of a deadly weapon ... ."  The indictment
thus charged defendant under N.J.S.A. 2C:15-1a(1) and
-1a(2) which provide that "[a] person is guilty of
robbery if, in the course of committing a theft, he
inflicts bodily injury or uses force upon another or
threatens another with or purposely puts him in fear of
immediate bodily injury ... ."  Absent from the
indictment was any specific allegation that defendant
was guilty of robbery because, in the course of
committing a theft, he "[c]ommitt[ed] or threaten[ed]
immediately to commit any crime of the first or second
degree." N.J.S.A. 2C:15-1a(3).  Moreover, absent from
the indictment was any allegation that defendant was
guilty of first degree robbery because he "attempt[ed]
to kill anyone" during the course of a theft, an
alternative basis for elevating the crime under
N.J.S.A. 2C:15-1b.  Nevertheless, the trial court in
its jury instructions defined robbery in terms of all
three subsections of N.J.S.A. 2C:15-1a, and likewise
charged on the "attempt to kill" theory set forth in
N.J.S.A. 2C:15-1b.  Defendant claims the trial court's
charge invited the jury to convict him of a crime of
which he was not indicted.  He also contends that the
instructions invited a nonunanimous verdict by
permitting the jury to convict on different theories of
culpability.  We disagree with both arguments.

The right to indictment by grand jury is a
constitutional imperative. N.J. Const., art. I, ¶ 8
(1947).  It is fundamental that an indictment charging
a defendant with the commission of a crime must
identify and explain the offense so that the accused
may prepare an adequate defense. State v. Talley, 94
N.J. 385, 392 (1983) (citing State v. Wein, 80 N.J.
491, 497 (1979)).  The principal inquiry, therefore,
"is whether the indictment substantially misleads or
misinforms the accused as to the crime charged." State
v. Wein, 80 N.J. at 497.  "The key is intelligibility."
Ibid.  The indictment must charge the defendant "in
reasonably understandable language setting forth all of
the critical facts and each of the essential elements
which constitute the offense alleged." Ibid. (citing

20

State v. Boratto, 80 N.J. 506 (1979); State v. Silverstein, 41 N.J. 203 (1963); State v. LaFera, 35 N.J. 75 (1961); State v. Low, 18 N.J. 179 (1955); State v. Malone, 13 N.J. Super. 510 (Law Div.), aff'd, 16 N.J. Super. 383 (App. Div. 1951)).  "Courts properly insist upon this level of communication in a criminal indictment."  State v. Wein, 80 N.J. at 497. Additionally, "the language of the charge ... must be definite and precise enough to preclude the possibility of a substitution by the petit jury in the criminal trial of an offense different from the crime which the grand jury in fact considered and charged."  Ibid.; see also State v. LeFurge, 101 N.J. 404, 419 (1986).

We are satisfied that the indictment reasonably informed defendant of the charges against him and encompassed the allegation that the murder of the victim took place in the course of a theft.  If the several counts of the indictment are read together with an appreciation of their common relationship in the same criminal subject matter, there can be no misunderstanding of the thrust of the State's allegations.  State v. Wein, 80 N.J. at 499. Defendant's reading of the indictment, which segregates the third count from the other charges, is far too literal.  Ibid.  Punctilious strictness which produces such a tortured result would defeat the purpose of criminal pleadings in the administration of the criminal laws without truly advancing the goal of fairness.  Defendant was not prejudiced in his ability to prepare a defense.  Nor was he surprised by the trial court's recitation of the elements of the offense.  The various counts of the indictment, read in proper contextual association with one another, fully apprised defendant of the charges that were ultimately placed before the jury.  See State v. Dixon, 125 N.J. 223, 256-58 (1991).  Defendant neither objected to the trial court's instructions nor submitted a request to charge.  We are convinced that defendant was fully informed of the thrust of the State's charges as submitted to the jury.  See State v. Mancini, 124 N.J. 232, 256-59 (1991).  In addition, to suggest that the third count put defendant on trial for criminal acts not within the contemplation of the grand jury would be an exercise of preciosity.

We find no sound basis to conclude that the principle of jury unanimity was violated.  We recognize

21

that the requirement of jury unanimity would be
impaired if some jurors found a violation of N.J.S.A.
2C:15-1a(1) or -1a(2), and others found a violation of
N.J.S.A. 2C:15-1a(3).  We also assume that the
principle would be violated if the jury was not
unanimous in its underlying finding enhancing or
elevating second degree to first degree robbery under
N.J.S.A. 2C:15-1b.  See State v. Bzura, 261 N.J. Super.
602, 612 (App. Div.), certif. denied, 133 N.J. 443
(1993).  And finally, we acknowledge that the trial
court did not instruct the jury in specific terms that
it was required to agree on the factual predicate for
the return of a verdict of guilty.  This much conceded,
the trial court clearly instructed the jury that its
verdict had to be unanimous.  Contrary to defendant's
claim, the trial court's charge did not invite the jury
to return a nonunanimous verdict.  We add before
leaving the subject that defendant did not object to
the trial court's charge on the basis that it invited a
nonunanimous verdict.  He should not be allowed to sit
idly by at trial and then raise a point of error that
could easily have been dissipated or cured had a timely
objection been interposed.  We find no error - much
less plain error.

(Resp. Ex. 10 at 7-11.)

There is no Fifth Amendment right to indictment by a grand
jury in state court criminal proceedings.  Albright v. Oliver,
510 U.S. 266, 272 (1994) (citing Hurtado v. California, 110 U.S.
516 (1884).  Nevertheless, charging instruments must meet
certain due process standards.  The sufficiency of a charging
instrument is measured by two criteria: "first, whether [it]
contains the elements of the offense intended to be charged, and
sufficiently apprises the defendant of what he must be prepared
to meet, and, secondly, in case any other proceedings are taken
against him for a similar offense whether the record shows with
accuracy to what extent he may plead a former acquittal or

conviction." <u>Russell v. United States</u>, 369 U.S. 749, 763-64 (1962) (internal citations omitted).

> In determining whether the notice in an indictment is sufficient to afford a defendant due process, the question is whether under the circumstances there was reasonable notice and information of the specific charge against him and a fair hearing in open court. <u>Paterno v. Lyons</u>, 334 U.S. 314, 320, 68 S.Ct. 1044, 1047, 92 L.Ed. 1409 (1948).  The indictment must be read as a whole.  <u>Wojtycha v. Hopkins</u>, 517 F.2d 420 (3d Cir. 1975).

<u>Bibby v. Tard</u>, 741 F.2d 26, 29 (3d Cir. 1984).

Here, although relying on state law, the state court determined that the indictment, read as a whole, properly informed Petitioner of the charge against him that the murder occurred in the course of a theft[3] and that the jury instructions, therefore, were proper.  The decision of the state court is not contrary to the applicable federal law.  Petitioner is not entitled to relief on this claim.

With respect to the claim that the instructions permitted a nonunanimous verdict, the Supreme Court has not held that the U.S. Constitution imposes a jury unanimity requirement in state criminal trials involving twelve jurors.  <u>See</u>, <u>e.g.</u>, <u>Richardson v. United States</u>, 526 U.S. 813, 821 (1999) (citing <u>Johnson v.</u>

---

[3] For example, the indictment charged Petitioner with two first-degree crimes, murder and felony murder, in addition to first-degree robbery.  The language of count two, that Petitioner "did cause death ... to Tito Merino during the commission of a robbery ...," put Petitioner on notice that the robbery was allegedly committed while he committed a first-degree offense. (Resp. Ex. 12 at Da2.)

23

<u>Louisiana</u>, 406 U.S. 356, 366 (1972) (affirming a conviction by a
9-3 jury vote) (Powell, J., concurring) (noting that "in criminal
cases due process of law is not denied by a state law which
dispenses with ... the necessity of a jury of twelve, or
unanimity in the verdict")); <u>Burch v. Louisiana</u>, 441 U.S. 130
(1979) (disapproving non-unanimous verdict by five of six
jurors); <u>Ballew v. Georgia</u>, 435 U.S. 223 (1978) (disapproving
unanimous five-person jury); <u>Apodaca v. Oregon</u>, 406 U.S. 404
(1972) (approving convictions by 11-1 and 10-2 votes); <u>Williams
v. Florida</u>, 399 U.S. 78 (1970) (approving six-person jury).

Nor has the Supreme Court required state juries to agree to
and to identify a single act that satisfies the overt act element
of a crime.  <u>See generally</u> <u>Hoover v. Johnson</u>, 193 F.3d 366, 369-
70 (5th Cir. 1999) (citing <u>Richardson</u>, 526 U.S. 813, and <u>Schad v.
Arizona</u>, 501 U.S. 624 (1991)).

Where, as here, however, a state imposes a jury unanimity
requirement, <u>see</u> <u>State v. Parker</u>, 124 N.J. 628, 633 (1991), <u>cert.
denied</u>, 503 U.S. 939 (1992) and <u>State v. Bzura</u>, 261 N.J. Super.
602, 608-09 (App. Div.), <u>certif. denied</u>, 133 N.J. 443 (1993), the
state violates the Due Process Clause of the federal Constitution
"if it fails meaningfully to vindicate that guarantee."  <u>See
Hoover</u>, 193 F.3d at 370 (citing <u>Evitts v. Lucey</u>, 469 U.S. 387,
400-01 (1985), in which the Court held that because Kentucky

allowed criminal appeals, it was required to administer them in a manner consistent with the federal Due Process Clause).

In New Jersey, "the scope of the unanimity requirement is sometimes unclear." Bzura, 261 N.J. Super. at 608. Here, the trial court gave a general unanimity instruction in a case where the theory of the trial, at all times, was that Petitioner caused the death of the victim in the course of a robbery. He was charged with, and convicted of, murder, felony murder, and robbery. This is not a situation in which the offender is alleged to have committed separate and conceptually distinct acts, any one of which could constitute the offense charged. See generally Bzura, 261 N.J. Super. at 608-09 (and cases discussed therein). There is no suggestion of jury confusion. Under these circumstances, it cannot be said that the Appellate Division's finding, that the jury instruction was sufficient, is contrary to or an unreasonable application of applicable federal law. Petitioner is not entitled to relief on this claim.

D.   Excessive Sentence

Petitioner contends that the trial court violated federal law by basing the sentence upon elements not found by the jury.[4]

---

[4] Petitioner's other complaints about the sentence, that the trial court misapplied aggravating factors and, therefore, arrived at an excessive consecutive sentence, allege only claims that the sentence violates state law, not that it violates the Constitution or laws of the United States. Accordingly, any such state-law error is not a ground for relief under 28 U.S.C. § 2254. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We

From a review of the state court record, it does not appear that Petitioner has exhausted this claim in the state courts. Respondent, however, does not interpose non-exhaustion as a defense and contends that the claim should be denied on the merits.  As the claim plainly does not entitle Petitioner to federal habeas relief, this Court will exercise its discretion to deny the claim, notwithstanding Petitioner's failure to exhaust the claim in state court.  See 28 U.S.C. § 2254(b)(2).

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In Blakely, the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  124 S.Ct. at 2536-37 (internal quotations omitted.)[5]

---

have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).

[5] Most recently, in United States v. Booker, 543 U.S. 220 (2005), the Supreme Court applied the rule of Appendi to the U.S. Sentencing Guidelines, holding that the Guidelines are not mandatory, but are merely advisory.

The rules announced in Apprendi and Blakely, however, are not applicable retroactively to cases on collateral review. See generally In re Olopade, 403 F.3d 159 (3d Cir. 2005) (finding that the decision of the Supreme Court in United States v. Booker, 543 U.S. 220 (2005), does not apply retroactively to cases on collateral review); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 540 U.S. 977 (2003) (holding that Apprendi v. New Jersey, 503 U.S. 466 (2000), does not apply retroactively to cases on collateral review); In re Turner, 267 F.3d 225 (3d Cir. 2001) (holding that Apprendi does not apply retroactively to cases on collateral review). See also United States v. Price, 400 F.3d 844, 849 (10th Cir.), cert. denied, 126 S.Ct. 731 (2005) (Blakely does not apply retroactively to cases on collateral review).

In any event, it does not appear that the trial court violated the rule of Apprendi/Blakely. The Supreme Court of New Jersey has held that there is no presumptive term for murder, but that "the standard range for murder is a sentence between thirty years and life imprisonment." State v. Abdullah, 184 N.J. 497, 507 (2005). In addition, under state law, "there is no presumption in favor of concurrent sentences and therefore the maximum potential sentence authorized by the jury verdict is the aggregate of sentences for multiple convictions." Abdullah, 184 N.J. at 513-14 (citation omitted). The Supreme Court has held

27

that judicial factfinding in support of a sentencing judge's discretion to sentence within a statutory range does not violate the constitution.  <u>See</u> <u>Booker</u>, 543 U.S. at 233; <u>Blakely</u>, 542 U.S. at 308-09.  Thus, the trial court did not sentence Petitioner beyond the statutory maximum in violation of <u>Apprendi</u> and <u>Blakely</u>.  Petitioner is not entitled to relief on this claim.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be

denied.   An appropriate order follows.




<u>    /s/ Jose L. Linares        </u>
United States District Judge

Dated: July 13, 2006